**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHERYL COLEMAN and LUBERTA ALLEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 08-cv-0145-MJR |
| | ) | |
| EAST ST. LOUIS SCHOOL DISTRICT NO. 189, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

### I.      Introduction and Procedural Background

On November 13, 2007, Plaintiffs, Sheryl Coleman and Luberta Allen, filed a two-count Complaint against Defendant East St. Louis School District No. 189 (the "District") in St. Clair County, Illinois, alleging claims of breach of contract and duty of good faith and defamation. Plaintiffs subsequently amended their Complaint to allege counts of deprivation of constitutional rights under 42 U.S.C. 1983 and breach of contract and duty of good faith under Illinois law. The District removed the case to the United States District Court for the Southern District of Illinois on February 28, 2008.  The District now moves the Court to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to grant summary judgment in its favor under Federal Rule of Civil Procedure 56 (Doc. 5).

Upon closer review of the file, the Court become concerned about its jurisdiction because it appeared that Plaintiffs' action had been severed in state court and that two separate amended complaints were before the Court.  After briefing by the parties, the Court's concerns have

been allayed. Plaintiffs and the District agree that this is, in fact, a single cause of action. The

District submitted the affidavit of Judy Kent, Deputy Clerk for the St. Clair County Circuit Clerk's

Civil Division, who avers that Plaintiffs' First Amended Complaints remain part of the St. Clair

County Circuit Clerk's case file for the matter of Sheryl Coleman and Luberta Allen v. East St.

Louis School District No. 189, St. Clair County Circuit Court Case No. 07-L-514. Doc. 17, Exhibit

1. Moreover, the Court has satisfied itself that Plaintiffs' action arose "out of the same transaction,

occurrence, or series of transactions or occurrences" and that questions of law and fact common to

both Plaintiffs arise in the action. *See George v. Smith,* **507 F.3d 605, 607 (7th Cir. 2007),** *quoting*

**Fed. R. Civ. P. 20(a)**.

The District employed Plaintiffs as school principals during the 2006-2007 school

year, Coleman at Hawthorne Elementary School and Allen at Lincoln Middle School. Plaintiffs stat

that, for the 2007-2008 school year, the District's Superintendent, Theresa Saunders, assigned

Coleman to be the principal at Brown Elementary School and Allen to be the principal at the District

Night High School. According to Plaintiffs, Saunders is vested with the authority to act for the

District with respect to employment of school personnel. Plaintiffs state that, in May, 2007,

Saunders publicly announced to the District's principals that they would receive a "step increase"

in salary.

On or about June 27, 2007, Saunders distributed employment contracts to Plaintiffs.

Coleman contends that her contract offer contained erroneous salary information for the position to

which she had previously been assigned. Allen contends that her contract offer contained erroneous

assignment *and* salary information as to the position to which she had previously been assigned.

*See* Doc. 2, Exhibit A (Allen's Employment Agreement) and Exhibit B (Coleman's Employment

Agreement)

Plaintiffs state that they attempted to communicate with Saunders regarding the erroneous information, but Saunders did not respond. Thereupon, Plaintiffs crossed out the salary provisions and, in Allen's case, the assignment provision as well, and wrote in what they contend is the correct information. They then signed and returned the contracts to Saunders. According to Plaintiffs, on or about August 10, 2007, Saunders reported to the District Board of Education that Plaintiffs refused to execute a contract of employment. Plaintiffs maintain that Saunders recommended to the Board that Coleman be reassigned to a teaching position and then terminated because she did not have a teaching certificate. She also, allegedly, recommended to the Board that Allen be reassigned to a teaching position. Plaintiffs were given no hearing or other opportunity to respond to either the allegation that they refused to execute an employment contract or their reassignment to teaching positions. Plaintiffs assert that the District did not pay Coleman after August 20, 2007, and did not pay Allen after August 10, 2007.

The District challenges Plaintiffs' claims, asserting that Plaintiffs cannot sustain the alleged liability under § 1983 because they have not identified a policymaker with final policymaking authority or a policy that is the "moving force" behind the alleged constitutional violation. The District also claims that Plaintiffs were not deprived of a cognizable constitutionally-protected property interest. Lastly, the District contends that the purported Employment Agreements underlying Count II of Plaintiffs' complaints are not valid and enforceable against the District.

Plaintiffs assert that the District can be the final policy-maker at the same time it gives Saunders authority to take final action and that "Saunders' action is the policy." Plaintiffs state that they had a property interest in employment in the 2007-2008 school year in that the

3

District offered them a detailed contract which they accepted.  Lastly, Plaintiffs contend that there

was a "meeting of the minds" where the relevant terms of employment for the coming school year

were accepted by Plaintiffs.

## II.    **Applicable Legal Standards**

The District seeks dismissal for failure to state a claim, under Rule 12(b)(6).  In

assessing a Rule 12(b)(6) motion, the Court must take as true all factual allegations and construe in

plaintiff's favor all reasonable inferences.  ***Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 656**

**(7th Cir. 2006); *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir.**

**2002).**  A complaint should be dismissed only "if there is no set of facts, even hypothesized, that

could entitle a plaintiff to relief."  ***Massey*, 464 F.3d at 656.**  As the United States Court of Appeals

for the Seventh Circuit explained recently:

> "We construe the complaint in the light most favorable to the
> plaintiff, taking as true all well-pleaded factual allegations and
> making all possible inferences from those allegations in his or her
> favor."  *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005)....
> Dismissal is proper "only if it 'appears beyond doubt that the plaintiff
> can prove no set of facts in support of his claim which would entitle
> him to relief.'" *Id.*

*McCready v. EBay, Inc.*, **453 F.3d 882, 887 (7th Cir. 2006).**

Indeed, the law of this Circuit recognizes that, generally, "a party need not plead

much to survive a motion to dismiss" – not specific facts, not legal theories, and not anything in

anticipation of a possible defense. ***Massey* at 650,** *citing Xechem, Inc. v. Bristol-Myers Squibb Co.*,

**372 F.3d 899, 901-02 (7th Cir. 2004).**  The gist of this Court's inquiry is "whether the complaint

gives the defendant fair notice of what the suit is about and the grounds on which it rests." ***Mosely***

***v. Board of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006).  *See also Swierkiewicz***

***v. Sorema N.A.*, 534 U.S. 506 (2002)(complaints need only present a claim for relief).**

A different standard governs the District's alternative motion for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment should be granted when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" ***Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006),** *quoting* **Fed. R. Civ. P. 56(c), and** *citing Ezell v. Potter***, 400 F.3d 1041, 1046 (7th Cir. 2005), and** *Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23 (1986).**

In assessing whether summary judgment is warranted, the Court must construe all evidence, plus the inferences reasonably drawn from the evidence, in the light most favorable to the non-moving party. ***Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007),** *citing Leaf v. Shelnutt***, 400 F.3d 1070, 1078 (7th Cir. 2005).**

Because Defendant has relied on a matter outside the pleadings, the affidavit of Princess Hayes-Garner, the motion is properly considered as one for summary judgment. ***See, e. g., Continental Cas. Co. v. American Nat. Ins. Co,* 417 F.3d 727, 732 (7th Cir. 2005)**. Therefore, it is with that standard in mind that the Court now rules.

### III. <u>Analysis</u>

#### A. <u>Claims under § 1983 (Count I)</u>

For purposes of local governmental liability under § 1983, whether a particular official has final policymaking authority is a question of state law. ***City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988)**. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether

an official had final policymaking authority is a question of state law." ***Praprotnik*, 485 U.S. at 124,**

***citing Pembaur v. Cincinnati,* 475 U.S. 469, 483 (1986)(plurality opinion)**.  In *Praprotnik*, the

Supreme Court "reexamined the issue of 'when a decision on a single occasion may be enough to

establish an unconstitutional municipal policy' under § 1983.  ***Auriemma v. City of Chicago,* 747**

**F.Supp. 465, 469 (N.D.Ill. 1990),** *quoting Praprotnik,* **485 U. S. at 924**.  A plurality of the Court

held that "a municipality could not be held liable under § 1983 'for the unconstitutional transfer of

a city employee where the officials who arranged for the transfer did not possess final policymaking

authority with respect to employment decisions and had not been delegated such authority.'" ***Id.,***

***quoting Mandel v. Doe,* 888 F.2d 783, 792 (11th Cir. 1989) (explaining holding of *Praprotnik* )**.

Therefore, under the *Praprotnik* analysis, Plaintiffs must show that Saunders had final policymaking

authority with respect to Plaintiffs' loss of employment as school principals.

Plaintiffs assert that Saunders  publicly announced to the District's principals that

they would receive a "step increase" in salary and falsely reported to the District Board of Education

that they had refused to execute contracts of employment.  Plaintiffs also posit their claims on a

theory that the District ratified Saunders's actions because the District acquiesced in her

recommendations and actions.  The District argues that it cannot be held liable for actions taken by

Saunders because she is not a policymaker with final policymaking authority.

Under Illinois law, it is the Board of Education, not its superintendent, that sets policy

on behalf of the District.  School Boards are authorized to "adopt and enforce all necessary rules for

the management and government of the public schools of their district."  **105 ILCS 5/10-20.5**.  The

superintendent "shall have charge of the administration of the schools under the direction of the

board of education.  In addition to the administrative duties, the superintendent shall make

6

recommendations to the board concerning ... the budget, ... [and] the selection, retention and dismissal of teachers and all other employees[.]" **105 ILCS 5/10-21.4**. "School boards shall ensure that their principals are evaluated on their instructional leadership ability and their ability to maintain a positive education and learning climate." **105 ILCS 5/10-21.4a**. Thus, although the superintendent is charged with making recommendations to the board, she is "under the direction of the board" and has no authority to retain or dismiss principals or to determine salaries. Accordingly, the District cannot be held liable under § 1983 for Saunders's public statement regarding the step increase in salary, her statements regarding the schools to which Plaintiffs would be assigned or her statement to the board that Plaintiffs had refused to execute their contracts. Saunders did not possess final policymaking authority with respect to employment decisions and had not been delegated such authority. Plaintiffs' purported employment agreements were not approved or executed by the District. *See* Doc. 6, Exhibit A, Garner-Hayes Affidavit ("Garner-Hayes Aff.") **105 ILCS 5/10-23.8b**, which governs the reclassification of principals, provides as follows:

> Upon non-renewal of a principal's administrative contract, the principal shall be reclassified pursuant to this Section. No principal who has completed 2 or more years of administrative service in the school district may be reclassified by demotion or reduction in rank from one position within a school district to another for which a lower salary is paid without written notice from the board of the proposed reclassification by April 1 of the year in which the contract expires. **105 ILCS 5/10-23.8b**.

Because neither Coleman nor Allen had completed the requisite "2 or more years of administrative service," they were entitled to be reclassified but not to the other protections of the statute. Consequently, they could be reclassified as classroom teachers without written notice from the board by April 1st of the year in which their contracts expired.

7

Moreover, the Court finds that Plaintiffs were not deprived of a constitutionally-protected property right or interest in their jobs as school principals. *See Border v. City of Crystal Lake*, **75 F.3d 270, 273 (7th Cir. 1996)**; *Wolf v. City of Fitchburg*, **870 F.2d 1327, 1330 (7th Cir. 1989)**. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, **408 U.S. 564, 577 (1972)**. These protections may arise by way of statute, regulations, municipal ordinance, or by way of an express or implied contract. *Domiano v. Village of River Grove*, **904 F.2d 1142, 1147 (7th Cir. 1990)**. A property interest might also arise from a "common law" of employment established through rules or "mutually explicit" understandings between an employer and an employee. *Hermes v. Hein*, **742 F.2d 350, 355 (7th Cir. 1984)**.

The Court again looks to Illinois law to determine whether Plaintiffs had a property interest in their positions. *Border*, **75 F.3d at 273**. Illinois is an employment-at-will state. *Harris v. Eckersall*, **771 N.E.2d 1072, 1074-75 (Ill.App. 1st Dist. 2002)**; *Lyznicki v. Board of Educ., School Dist. 167, Cook County*, **707 F.2d 949 (7th Cir. 1983)**. As a result, "absent a specific contract to the contrary, employment contracts are terminable at will.... [A]n at-will employee can be terminated at any time for any reason or no reason, [and] an at-will employee has no property interest in continued employment." *Harris,* **771 N.E.2d at 1075**. "[A]bsent legislative, administrative, or contractual provisions to the contrary, a public employee in Illinois holds his office at the pleasure of the appointing power, which may remove him at any time." *Id.* **771 N.E.2d at 1074-75,** *quoting Willecke v. Bingham*, **662 N.E.2d 122, 125 (Ill.App.Ct. 1996),** *citing Levin*

*v. Civil Service Comm'n*, **288 N.E.2d 97 (Ill. 1972)**. As applicable here, stated succinctly, "The principal does not have tenure as a principal." *Swanson v. Board of Educ. of Forman Community Unit School Dist. No. 124, Mason County,* **481 N.E.2d 1248, 1253 (Ill.App.Ct. 1985)**.

The Court is guided by the Seventh Circuit's analysis and holding in the *Lyznicki* case. There, the district's board of education voted to renew Lyznicki's principal's contract for the following academic year and, approximately four months later, changed its vote at the recommendation of the district superintendent and without notice to Lyznicki. The board directed that Lyznicki's contract not be renewed and demoted him to a regular classroom teacher. Lyznicki brought suit under 42 U.S.C. § 1983 against the superintendent, the board, and various board members, seeking damages and reinstatement. Among his claims was the allegation that the defendants had deprived him of a property right in continued employment as a principal, without due process of law, and therefore in violation of the Fourteenth Amendment and the Illinois School Code.

In considering whether Lyznicki had any right under state law to continued employment as a principal, the Court found that he could not base such a right on contract. *Lyznicki,* **707 F.2d at 951,** *citing Roth,* **408 U.S. at 577.**[1] Lyznicki had only a yearly contract as a principal and was not terminated until June, the end of the contract year. *Id* If he had signed a contract when the board first voted to renew it and the board had broken the contract, he could have

---

[1]The Court doubted whether demotion without loss of pay would be a "deprivation" in a constitutional sense. It decided that it need not reach that issue because Lyznicki had no right under state law to continued employment as a principal and could not base such a right on contract. Plaintiffs herein were reassigned as Classroom Teachers for the year with no loss of pay. *See* Garner-Hayes Aff. They were subsequently reclassified as Classroom Teachers for fiscal year 2009 at the Classroom Teacher salary negotiated under the collective bargaining agreement with the Illinois Federation of Teachers, Local 1220. *Id.*

complained of the deprivation of a property right. ***Id., citing Hostrop v. Board of Junior College Dist. No. 515,* 471 F.2d 488, 494 (7th Cir. 1972), and *Vail v. Board of Educ. of Paris Union School Dist. No. 5,* 706 F.2d 1435 (7th Cir. 1983)**. Lyznicki signed no contract, and, therefore, there was at most an offer but no acceptance.

Similarly, Plaintiffs in the current proceeding had only yearly contracts as principals and were not terminated until June, the end of the contract year. If they had signed the contract offered to them and the board had subsequently broken the contract, they could have complained of the deprivation of a property right. However, rather than signing the contract as offered, Plaintiffs interlineated a different salary provision and, in Allen's case a different assignment as well. "For a contract to exist, there must be both an offer and and acceptance, and the acceptance must comply strictly with the terms of the offer. An acceptance requiring any modification or change of terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed." ***Tranzact Technologies, Ltd. v. Evergreen Partners, Ltd.*, 2001 WL 1035338, 3 (N.D.Ill. 2001), *citing Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.,* 484 N.E.2d 1178, 1185 (Ill.App.Ct. 1985)**. "In order for a contract to exist, there must be mutual assent by the parties on the essential elements contained therein." ***Id., citing Meyer v. Marilyn Meyer, Inc.,* 652 N.E.2d 1233, 1235 (Ill.App.Ct. 1995)**. The amount of the salary to be paid is an essential element of the contract. Thus, there was no valid and enforceable contract. There was, at most, the District's offer and Plaintiffs' counteroffer, which the District rejected.

Equally, under the ***Lyznicki*** analysis, Plaintiffs' assertion that the board ratified Saunders's decision is meritless. The Seventh Circuit did not find ratification of the superintendent's statements or actions where the board changed its vote at the superintendent's

recommendation and did not renew Lyznicki's contract. Similarly, the board did not ratify Saunders's decisions or statements where it offered Employment Agreements to Plaintiffs and then rejected Plaintiffs' counteroffers.

Plaintiffs' contention that there was a "meeting of the minds" when Saunders allegedly announced the "step increase" and discussed assignments with Plaintiffs also fails. "For an oral contract to exist, the parties must have had a meeting of the minds with respect to the terms of the agreement and must have intended to be bound by the oral agreement. The focus under Illinois law is on the conduct of the parties and whether that conduct objectively manifested assent to an agreement." *James v. Heartland Health Services,* **2005 WL 678732, 7 (N.D.Ill. 2005) (citations omitted)**. Plaintiffs maintain that Saunders's statement, in a public forum, that principals would be given a step increase amounted to a meeting of the minds that not only would they be retained as principals but also that they would receive a pay increase. They also maintain that Saunders offered them specific school assignments. The parties to the purported contracts, however, were Plaintiffs and the District. Plaintiffs make no factual allegations as to representations by the District which, alone, had the authority to enter into an employment contract with them. As set forth above, the District made an offer, but, ultimately, there was no contract. Plaintiffs have failed to meet their burden of showing facts which state a claim for breach of an oral contract.

In sum, construing all evidence, plus the inferences reasonably drawn from the evidence, in the light most favorable to Plaintiffs, there exists no "specific ordinance, State law, contract or understanding," sufficient to establish a protectable property interest in their continued employment. *See Krecek v. Board of Police Com'rs of La Grange Park***, 646 N.E.2d 1314, 1319 (Ill.App.Ct. 1995)**. As Illinois employees, Plaintiffs' employment was "at-will" and could have

been terminated "at any time for any reason or no reason...." ***Harris*, 771 N.E.2d at 1074-75**.

For all of the above reasons, Plaintiffs' claims for deprivation of constitutional rights under § 1983 is subject to dismissal on summary judgment.

**B.      Breach of Contract and Duty of Good Faith (Count II)**

Plaintiffs allege that the District breached the contract for employment and the duty to act in good faith by failing to pay them in accordance with Saunders's statement that principals would receive the step increase and by reassigning them to teaching positions.

The District responds that Plaintiffs cannot meet the required elements of a claim for common law breach of contract in Illinois because the employment agreements were modified by Plaintiffs and were never approved and executed by the District.

Indeed, Plaintiffs' claim is doomed at the outset. In order to state a cause of action for breach of contract under Illinois law, "a plaintiff must show: (1) the existence of a valid contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant; and (4) a resulting injury to the plaintiff." ***Manufacturers Life Ins. Co. (U.S.A.) v. Mascon Information Technologies Ltd.,* 270 F.Supp.2d 1009, 1013 (N.D.Ill. 2003)(citation omitted)**. As discussed exhaustively above, the parties did not enter into a contract. Lacking the formation of a valid and enforceable contract, no obligations arose, and there could be no breach.

Parenthetically, the Court notes that while Illinois law recognizes a covenant of good faith and fair dealing implied by law in every contract, Illinois "expressly rejects a broad independent cause of action in tort for the breach of that implied contractual duty, and limits such a claim to the very narrow circumstances present in cases when an insurer has a 'duty to settle' lawsuits brought against a insurance policyholder." ***AW Acquisition Corp. v. Southwestern Bell***

*Mobile Systems, LLC,* **2005 WL 61466, 3 (N.D.Ill. 2005)**. Thus, under the present circumstances,

only as implied by law within a contract does the duty of good faith and fair dealing exist and not

as a separate tort. There was no contract and, therefore, no duty.

For these reasons, Plaintiffs' claims for breach of contract and duty of good faith are

subject to dismissal on summary judgment.

IV.     **Conclusion**

For the foregoing reasons, the Court **GRANTS** the District's motion for summary

(Doc. 5). The Clerk of Court is directed to enter judgment in favor of Defendant East St. Louis

School District No. 189 and against Plaintiffs Sheryl Coleman and Luberta Allen. This case is

closed.

**IT IS SO ORDERED.**

**DATED this 19th day of September, 2008**


**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**