IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHERYL COLEMAN and LUBERTA ALLEN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 08-cv-0145-MJR<br>) |
| EAST ST. LOUIS SCHOOL DISTRICT NO. 189, | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

### I. Introduction and Procedural Background

On November 13, 2007, Sheryl Coleman and Luberta Allen filed a two-count Complaint against Defendant East St. Louis School District No. 189 ("the District") in St. Clair County, Illinois, alleging claims of breach of contract and duty of good faith, and defamation. Plaintiffs subsequently amended their complaint to allege counts of deprivation of constitutional rights under 42 U.S.C. § 1983 and breach of contract and duty of good faith under Illinois law. The District removed the case to the United States District Court for the Southern District of Illinois on February 28, 2008.

The District employed Plaintiffs as school principals during the 2006-2007 school year, Coleman at Hawthorne Elementary School and Allen at Lincoln Middle School. Plaintiffs state that, for the 2007-2008 school year, the District's Superintendent, Theresa Saunders, assigned Coleman to be the principal at Brown Elementary School and Allen to be the principal at the District Night High School. According to Plaintiffs, Saunders is vested with the authority to act for the

1

District with respect to employment of school personnel. Plaintiffs submit that, in May 2007, Saunders publicly announced to the District's principals that they would receive a "step increase" in salary.

On June 27, 2007, Saunders distributed employment contracts to Plaintiffs. Coleman contends that her contract offer contained erroneous salary information for the position to which she had previously been assigned. Allen contends that her contract offer contained erroneous salary *and* assignment information for the position to which she had previously been assigned. *See* Doc. 2, Exhibit A (Allen's Employment Agreement) and Exhibit B (Coleman's Employment Agreement)

Plaintiffs submit that they attempted to communicate with Saunders regarding the erroneous information, but Saunders failed to respond to them. Thereupon, Plaintiffs lined out the salary provisions and, in Allen's case, the assignment provision as well, and wrote in what they believed to be the correct information. They then signed and returned the contracts to Saunders. According to Plaintiffs, on August 10, 2007, Saunders reported to the District Board of Education that Plaintiffs refused to execute a contract of employment. Plaintiffs maintain that Saunders recommended to the Board that Coleman be reassigned to a teaching position and then terminated because she did not have a teaching certificate. Allegedly, she also recommended to the Board that Allen be reassigned to a teaching position. Plaintiffs were given no hearing or other opportunity to respond to their reassignment to teaching positions or to the allegation that they refused to execute employment contracts. Plaintiffs assert that the District did not pay Coleman after August 20, 2007, and did not pay Allen after August 10, 2007.

The District moves for summary judgment, contending that it did not violate Plaintiffs' constitutional rights and that the purported employment agreements are not valid and

enforceable against the District (Doc. 39). The motion is fully briefed and ready for disposition.

**II.     Analysis**

Summary judgment is appropriate where the pleadings, discovery and disclosure materials on file and any affidavits show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. ***Estate of Suskovich v. Anthem Health Plans of Virginia,* Inc., 553 F.3d 559, 563 (7th Cir. 2009),** *citing* **Fed. R. Civ. P. 56(c). *Accord Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008); *Levy v. Minnesota Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008).**

In ruling on a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party (here, Plaintiffs). ***Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).**

The non-movants cannot rest on their pleadings, though. Rather, the non-movants must provide evidence on which the jury or court could find in *their* favor. ***Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).** As the Seventh Circuit Court of Appeals recently explained:

> [T]he non-moving party must submit evidence that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party.

***Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 531-32 (7th Cir. 2009).**

This Court applies the substantive law of Illinois, the state in which this diversity case was filed, to Plaintiffs' claim. ***Id., citing Global Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 981 (7th Cir. 2004).**

### A. Municipal liability

To establish municipal liability under § 1983, a plaintiff must present sufficient evidence to show that an official policy, custom or practice caused the constitutional violation and, indeed, was "the moving force" behind the violation. ***Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). *See also Johnson v. City of Kankakee*, 260 Fed.Appx. 922, 926, 2008 WL 186939, \*3 (7th Cir. 2008), *citing Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978).** So, municipal liability is limited to action for which the municipality is actually responsible. ***Estate of Sims*, 506 F.3d at 515, *citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).** "Misbehaving employees are responsible for their own conduct; 'units of local government are responsible only for their own policies, not for misconduct by their workers.'" ***Id., citing Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007), *quoting Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007).** There is no *respondeat superior* liability for municipalities under § 1983. ***Belcher v. Norton*, 497 F.3d 742, 754 (7th Cir. 2007).**

"A plaintiff may establish municipal liability under § 1983 by showing '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" ***Waters v. City of Chicago,* 580 F.3d 575, 581 (7th Cir. 2009), *quoting Estate of Sims*, 506 F.3d at 515**. For purposes of local governmental liability under § 1983, whether a particular official has final

policymaking authority is a question of state law. *City of St. Louis v. Praprotnik,* **485 U.S. 112 (1988)**. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Praprotnik***, 485 U.S. at 124,** *citing Pembaur v. Cincinnati,* **475 U.S. 469, 483 (1986)(plurality opinion)**. In *Praprotnik*, the Supreme Court "reexamined the issue of 'when a decision on a single occasion may be enough to establish an unconstitutional municipal policy'" under § 1983. *Auriemma v. City of Chicago,* **747 F.Supp. 465, 469 (N.D.Ill. 1990),** *quoting Praprotnik,* **485 U. S. at 924**. A plurality of the Court held that "a municipality could not be held liable under § 1983 'for the unconstitutional transfer of a city employee where the officials who arranged for the transfer did not possess final policymaking authority with respect to employment decisions and had not been delegated such authority.'" *Id., quoting Mandel v. Doe,* **888 F.2d 783, 792 (11th Cir. 1989) (explaining holding of** *Praprotnik* **)**.

In the current proceeding, Plaintiffs submit that they can demonstrate municipal liability by direct reference to official policy or by delegation of authority to a policymaker.

Plaintiffs assert that they "will demonstrate" that the express policy to offer written employment contracts to principals, as enacted by the District and as carried out by the District in an untimely manner, caused their constitutional deprivation. Plaintiffs contend that District Board of Education Policy 3:60 was carried out in violation of state law and is the mechanism by which Plaintiffs' civil rights were violated.

More is required to withstand a motion for summary judgment than a statement of what Plaintiffs "will demonstrate" and a bare reference to District Policy 3:60, which the Court reproduces in its entirety, with the exception of legal references and cross references:

**Administrative Responsibility of the Building Principal**

The School Board, upon the recommendation of the Superintendent, employs Building Principals as the chief administrators and instructional leaders of their assigned schools. The primary responsibility of a Building Principal is the improvement of instruction. Each Building Principal shall perform all duties as described in The School Code as well as such other duties as specified in his or her employment agreement or as agreed upon by the Building Principal and Superintendent.

The Superintendent or designee shall develop and maintain a principal evaluation plan that complies with Section 24A-15 of The School Code. Using that plan, the Superintendent or designee shall evaluate each Building Principal. The Superintendent or designee may conduct additional evaluations.

The School Board and each Building Principal shall enter into an employment agreement that conforms to Board policy and State law. The terms of an individual employment contract, when in conflict with the evaluation plan or this policy, will control.
\*     \*     \*
ADOPTED:   November 20, 2006

Plaintiffs state that this policy "which *purports* to conform to state law, was carried out in violation of state law, is the mechanism by which plaintiffs [sic] civil rights were violated." (emphasis added). However, Plaintiffs do not show in what way the policy - or any specific provision thereof - (a) fails to conform to state law, (b) was carried out in violation of state law and (c) is the mechanism whereby their civil rights were violated. Plaintiffs provide no evidence that would cause a jury or the Court to find in their favor, and mere contentions are insufficient to withstand a motion for summary judgment. ***See Johnson v. Cambridge Industries, Inc*., 325 F.3d 892, 901 (7th Cir. 2003),** *quoting* **Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999) ("[S]ummary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.")**. Rather than providing evidence on which a jury or the Court could find in their favor,

Plaintiffs assert only that they "will demonstrate" that this policy caused their constitutional deprivation. Plaintiffs have not provided a scintilla of evidence to support this assertion. In sum, Plaintiffs have failed to demonstrate municipal liability by direct reference to official policy.

Plaintiffs next contend that they can demonstrate municipal liability by showing that the constitutional injury was caused by a person to whom the District delegated final policymaking authority. First, Plaintiffs assert that they will demonstrate that the Board granted Saunders the authority to control District policy with respect to employment contracts with principals. Second, Plaintiffs contend that Saunders was able to convince the Board that it should change its policy and offer "performance-based" contracts. Third, Plaintiffs submit that "the record is replete with references" showing that only Saunders, or her immediate subordinates, carried out the terms of the changed policy on performance-based contracts for the principals.

Under Illinois law, it is the Board of Education, not the superintendent, that sets policy on behalf of the District. School Boards are authorized to "adopt and enforce all necessary rules for the management and government of the public schools of their district." **105 ILCS 5/10-20.5**. The superintendent "shall have charge of the administration of the schools under the direction of the board of education. In addition to the administrative duties, the superintendent shall make recommendations to the board concerning ... the budget,... [and] the selection, retention and dismissal of teachers and all other employees...." **105 ILCS 5/10-21.4**. "School boards shall ensure that their principals are evaluated on their instructional leadership ability and their ability to maintain a positive education and learning climate." **105 ILCS 5/10-21.4a**.

In sum, Illinois law provides that the superintendent is charged with making recommendations to the board, but she remains "under the direction of the board" and has no

inherent authority to retain or dismiss principals or to determine salaries. However, the District *may* delegate the authority to retain or dismiss principals to the superintendent:

> Notwithstanding any other provision in this Article or in the School Code, the board may delegate to the general superintendent or to the attorney the authorities granted to the board in the School Code, provided such delegation and appropriate oversight procedures are made pursuant to board by-laws, rules and regulations, adopted as herein provided, except that the board may not delegate its authorities and responsibilities regarding (1) budget approval obligations; (2) rule-making functions; (3) desegregation obligations; (4) real estate acquisition, sale or lease in excess of 10 years as provided in Section 34-21; (5) the levy of taxes; or (6) any mandates imposed upon the board by "An Act in relation to school reform in cities over 500,000, amending Acts herein named," approved December 12, 1988 (P.A. 85-1418). **105 ILCS 5/34-19**.

The six nondelegable functions listed in the statute are not relevant to the question of the retention or dismissal of principals (except for possible budget impact), so the Court must conclude that the District could, pursuant to its own by-laws, rules and regulations, authorize the superintendent to retain or dismiss principals. ***See Land v. Board of Educ. of City of Chicago,* 202 Ill.2d 414, 431, 781 N.E.2d 249, 259-60 (Ill. 2002) (finding that the school board was not prohibited from delegating its layoff authority)**. However, the District Board of Education Policy provides that it is the School Board that makes employment decisions:

> The powers and duties of the School Board generally include:
>
>   1. Formulating, adopting, and modifying School Board policies, at its sole discretion, subject only to mandatory collective bargaining agreements and State and federal law. Employing a Superintendent and other personnel, making employment decisions, and dismissing personnel.
>
>   2. Directing, through policy, the Superintendent, in his or her charge of the District's administration. Doc. 4, Exh. A, Att. 1, District Board of Education Policy 2:20.

A plain reading of the District's education policy compels the conclusion that the Board adopts policies at its sole discretion, employs and dismisses all personnel, and makes all employment

decisions. Nothing in the policy authorizes the Superintendent to make those decisions.

Offering a step increase in salary appears to be a nondelegable duty because it impacts "budget approval obligations." And, if nondelegable, the District could not have given final policymaking authority to Saunders regarding step increases in salary. Even if it were a delegable duty, Plaintiffs have pointed to no by-laws, rules or regulations adopted by the District delegating to Saunders the authority to offer salary increases. And, lastly, even that narrow prospect is foreclosed by the affidavit of Princess Garner-Hayes, the District's Executive Director of Human Resources, who stated, "For District Employees, a 'step increase,' which is movement to the next step within a salary level, is only granted through a written employment agreement or collective-bargaining agreement approved by the District Board of Education, or otherwise approved by the District Board of Education." Doc. 40, Exh. A, Garner-Hayes Aff. ¶ 4. Without the delegation of the authority to make employment decisions or to grant step increases under the relevant statutes and policy (even where possible), Saunders lacked final policymaking authority and could only make recommendations.

Moreover, Plaintiffs' assertions as to Saunders's role are insufficient to withstand summary judgment on this issue. ***See Johnson,*** **325 F.3d at 901,** *quoting Schacht,* **175 F.3d at 504**. Plaintiffs may not rest on their pleadings but must submit evidence to show that there is a genuine issue for trial and that a jury could reasonably find in their favor. **Fed. R. Civ. P. 56(e);** ***Giant Screen Sports,* 553 F.3d at 531-32**. Rather than submitting evidence on which a jury or the Court could find in their favor, Plaintiffs assert only that they "will demonstrate" that Saunders demanded of, and was given by, the Board the authority to control the policy of the District with respect to employment contracts with principals. Plaintiffs have provided no evidence to support this assertion,

and, indeed, as discussed above, Illinois statutes and District policy run counter to such a grant of authority.

Second, Plaintiffs' contention that Saunders was able to convince the Board that it should change its policy and offer "performance-based" contracts does not support their assertion that Saunders had policymaking authority but actually underscores the fact that the Board made policy and Saunders made recommendations.

Third, Plaintiffs submit that "the record is replete with references" showing that only Saunders, or her immediate subordinates, carried out the terms of the changed policy on performance-based contracts for the principals. The Court is not required to sift through the record, replete or not, in search of facts pertinent to Plaintiffs' position. ***See United States of America by and through Joseph E. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("[J]udges ... need not try to fish a gold coin from a bucket of mud.")**. Moreover, even if the Court were to scour the record and find facts supporting this claim, these facts would be unhelpful to Plaintiffs: that Saunders carried out a policy does nothing to establish that she had authority to make policy.

Lastly, assuming that Saunders's actions injured Plaintiffs, her misconduct cannot be attributed to the District because there is no *respondeat superior* liability under § 1983, and the District is responsible only for its own policies. Plaintiffs have not demonstrated the existence of a District policy whereby final policymaking authority was delegated to Saunders. Accordingly, the District cannot be held liable under § 1983 for Saunders's public statement regarding the step increase in salary, her statement regarding the schools to which Plaintiffs would be assigned or her statement to the Board that Plaintiffs had refused to execute their contracts.

In summary, Plaintiffs have failed to demonstrate municipal liability by direct

reference to an official policy that was "the moving force" behind the constitutional injury alleged or by establishing that the violation was caused by a person with final policymaking authority. In the absence of any official regulation, policy or custom (or a violation of constitutional rights the moving force for which is such a regulation, policy or custom) and in the absence of a constitutional injury caused by delegation of final policymaking authority, the District is entitled to summary judgment on this issue.

### B.   Due process claim

Plaintiffs maintain that they have a Fourteenth Amendment due process interest in their continued employment based upon the District's historical course of conduct whereby principals "worked on a series of annual contracts, not reduced to writing, with an annual salary term supplied by the mutual understanding of the parties relative to a salary schedule promulgated by the School District." Doc. 43, Pls' Response, p. 6. More specifically, Plaintiffs contend that they had a contractual relationship with the District which, under prior custom and practice, renewed on July 1, 2007, and ended only when performance-based contracts approved by the District were executed by school administrators or when the District notified principals of non-renewal - according to Plaintiffs, in mid-August, 2007.

In Saunders's deposition, she testified as follows:

Q. What was the time period that the first performance-based contracts were offered?
A. Let's see, they had to be approved in March or at the very latest April. Because if they aren't approved by April 1st, I believe it is, then whatever existed before just rolled over. Doc. 43-1, Saunders Dep. 22:24-23:6.

Plaintiffs assert that, when the performance-based contracts were not offered by April 1, what "rolled over" was their prior contractual relationship with the District and, consequently, their

interest in continued employment as principals. The Court must then look to the District's historical practice and at the performance-based contracts offered to determine whether Plaintiffs had a due process interest in continued employment.

In analyzing any due process claim, this Court must answer two questions: "(1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2), if so, whether that deprivation occurred without due process of law." ***Williams v. Seniff,* 342 F.3d 774, 786-87 (7th Cir. 2003)**.

In order to succeed on their due process claims, Plaintiffs must first show that they possessed a constitutionally-protected property interest in their jobs as principals. *See **Border v. City of Crystal Lake,* 75 F.3d 270, 273 (7th Cir. 1996)**; ***Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989)**. "Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." ***Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)**. These protections may arise by way of statute, regulations, municipal ordinance, or by way of an express or implied contract. ***Domiano v. Village of River Grove,* 904 F.2d 1142, 1147 (7th Cir. 1990)**. A property interest might also arise from a "common law" of employment established through rules or "mutually explicit" understandings between an employer and an employee. ***Hermes v. Hein,* 742 F.2d 350, 355 (7th Cir. 1984)**.

Because Plaintiffs were employed in Illinois, the Court first must look to Illinois law in determining whether they had a property interest in their positions. ***Border,* 75 F.3d at 273**. Illinois is an employment-at-will state. ***Harris v. Eckersall,* 771 N.E.2d 1072, 1074-75 (Ill.App.**

**1st Dist. 2002)**. As a result, "absent a specific contract to the contrary, employment contracts are terminable at will.... Because an at-will employee can be terminated at any time for any reason or no reason, an at-will employee has no property interest in continued employment." ***Id.* at 1075.** "'[A]bsent legislative, administrative, or contractual provisions to the contrary, a public employee in Illinois holds his office at the pleasure of the appointing power, which may remove him at any time.'" *Id., quoting Willecke v. Bingham*, **662 N.E.2d 122, 125 (Ill.App.Ct. 1996)**, *citing Levin v. Civil Service Comm'n*, **288 N.E.2d 97 (Ill. 1972)**.

Despite Illinois's presumption of "at-will" employment, Plaintiffs asserts that their employment was not "at will" but that they had a property right to continued employment based on the District's historical course of conduct whereby principals were employed under a series of annual, unwritten contracts with salary terms supplied by the mutual understanding of the parties relative to the District's salary schedule. Plaintiffs explain that the District initiated a process to have its principals work under multi-year, performance-based contracts for Fiscal Year 2008, *i.e.*, for the 2007-2008 school year. Plaintiffs state that the initiation of "performance-based" contracts by the District was done pursuant to § 10-23.8a of the Illinois School Code. According to Plaintiffs, written contracts were distributed to school principals for the first time in mid-June, 2007, which was *after* the April cut-off date Illinois law established for non-renewal of principals' contracts and for reclassification of principals. Plaintiffs maintain that the District's termination of Plaintiffs as principals in August 2007 came three months too late.

Section 10-23.8a of the Illinois School Code provides as follows:

> Upon non-renewal of a principal's administrative contract, the principal shall be reclassified pursuant to this Section. No principal who has completed 2 or more years of administrative service in the school district may be reclassified by demotion or reduction in rank from one position within a school district to another for which

13

a lower salary is paid without written notice from the board of the proposed reclassification by April 1 of the year in which the contract expires. **105 ILCS 5/10-23.8b**.

It is undisputed that Coleman and Allen had each completed the requisite two years of administrative service in the District to come within the protections of the statute. It is also undisputed that the District failed to notify Plaintiffs of the proposed reclassification by April 1, 2007. The nub of the controversy is whether Plaintiffs were reclassified "from one position within a school district to another for which a lower salary is paid."

Plaintiffs contest Defendants' assertion that there was no change in their salaries for the 2007-2008 school year. In particular, they submit that, during the summer, they undertook work in contemplation of their assignments as principals, and, as a result, the District obtained efforts that they were not required to provide if reclassified as teachers. Additionally, Plaintiffs contend that the appropriate salary for the 2007-2008 school year would have been in accordance with the District's historical practices.

The latter argument is clearly meritless. Under the District's historical practice, as described by Plaintiffs themselves, an annual salary term was the result of the mutual understanding of the parties relative to a salary schedule promulgated by the District. Plaintiffs have failed to demonstrate that the parties had arrived at an annual salary term through mutual understanding or that the District had promulgated such a schedule for the 2007-2008 school year.

As to Plaintiffs' former argument, stated simply, Plaintiffs' salaries were not lowered when they were reclassified from principals to classroom teachers. For Fiscal Year 2007 (July 1, 2006 to June 30, 2007), Coleman was employed with the District as a 200-workday principal at an annual salary of $81,754. Garner-Hayes Aff. ¶ 9. She continued as a 200-workday principal for

14

Fiscal Year 2008 (July 1, 2007 to June 30, 2008) at an annual salary of $85,024 until she was reclassified by the District as a 180-workday classroom teacher for Fiscal Year 2008 with no change in salary. *Id*. For Fiscal Year 2007, Luberta Allen was employed with the District as a 210-workday principal at an annual salary of $96,562. *Id*. at ¶ 10. She continued as a 210-workday principal for Fiscal Year 2008 at the same annual salary until the District reclassified her as a 180-workday classroom teach for Fiscal Year 2008 with no change in salary. *Id.* For Fiscal Year 2009, the District confirmed notice of reclassification well in advance of the April 1, 2008, deadline (by letter dated December 21, 2007), and Plaintiffs were paid the applicable classroom teacher salary under the negotiated collective bargaining agreement with the Illinois Federation of Teachers, Local 1220. Garner-Hayes Aff. ¶¶ 9-10. Plaintiffs have not shown that their salaries were lowered when they were reclassified from principals to classroom teacher and that, as a result, the District's actions violated the statute.

However, Plaintiffs' argument on statutory construction compels the Court to delve more deeply. Even though Plaintiffs' salaries were not lowered, did the District violate § 10-23.8b where Plaintiffs were reclassified to *positions* for which a lower salary is paid? Unfortunately for Plaintiffs, the Seventh Circuit Court of Appeals' analysis in **Lyznicki v. Board of Educ., School Dist. 167, Cook County, Ill., 707 F.2d 949 (7th Cir. 1983)** puts paid to that argument. There the Court explained that it was "reluctant to draw the inference that the statute covers every change in rank. It would have been awfully easy to say just that; the focus, so far as we are able to find one in an ambiguous statute that the courts of the state have not construed and that the legislative history does not illuminate, is on the protection of salary rather than office. **Lyznicki, 707 F.2d at 952-53**. The Court also stated, without deciding, that "[w]hether demotion without loss of pay would be a

15

'deprivation' in a constitutional sense may be doubted...." *Id.* **at 951**. Under this analysis, because Plaintiffs' salaries were protected, their reduction in rank does not violate § 10-23.8b.

The Seventh Circuit went further, however, concluding, "Although the statute confers a right to a hearing, no standards are prescribed for the board to follow at the hearing; it seems it can reclassify a principal, after expiration of his yearly contract, for any reason or no reason." *Id.* **at 952**. The Court then reasoned that "[a] mere right to notice and a hearing ... does not change the essential character of the employment relationship as one of employment at will; it does not convert it into a form of tenure employment and thus create a Fourteenth Amendment property right." *Id*. In sum, the state law procedural protections set forth in § 10-23.8b did not give rise to a protected property interest in Plaintiffs' employment as principals with the District.

Plaintiffs' final contention is that the District violated their constitutional rights by falsely stating that they had not signed contracts. Citing *Dupuy v. Samuels*, 397 F.3d 493, 509-11 (7th Cir. 2005)*,* Plaintiffs submit that because they have a cognizable property interest in employment they are also entitled to "constitutional safeguards to protect their good name or reputation incident to the alteration of legal status by the public employer." The difficulties Plaintiffs face in sustaining this argument are (at least) twofold: (1) as set forth above, they have no cognizable property interest in employment: and (2) it is true that they did not sign contracts. Because the Court has thoroughly analyzed Plaintiffs' lack of a cognizable property interest in employment, *supra*, it will focus the remainder of this analysis on the issue of whether the alleged public report that Plaintiffs had not signed their contracts was false.

"For a contract to exist, there must be both an offer and acceptance, and the acceptance must comply strictly with the terms of the offer. An acceptance requiring any

modification or change of terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed." ***Tranzact Technologies, Ltd. v. Evergreen Partners, Ltd.*, 2001 WL 1035338, 3 (N.D.Ill. 2001), citing Ebert v. Dr. Scholl's Foot Comfort Shops, Inc., 484 N.E.2d 1178, 1185 (Ill.App.Ct. 1985)**. "In order for a contract to exist, there must be mutual assent by the parties on the essential elements contained therein." ***Id., citing Meyer v. Marilyn Meyer, Inc., 652 N.E.2d 1233, 1235 (Ill.App.Ct. 1995)***.

  Plaintiffs maintain that they signed and returned the employment contracts. However, the executed contracts, attached to Plaintiffs' complaints, show quite clearly that they modified the terms of the contracts. Allen lined out the annual salary offered, $96,562.00, and inserted "$115,14...." (numbers omitted in copying). Allen also circled the term "absolute" in the phrase "sole and absolute discretion" as well as lining out the word "assistant" in "assistant high school principal." Doc. 2, Exhibit A. Coleman lined out the annual salary offered, $85,024.00, and inserted $88,425. Doc. 2, Exhibit B.

  As a result, there was no mutual assent by the parties on essential elements, *i.e.,* no mutual assent between the District and Allen on salary and position, and no mutual assent between the District and Coleman on salary. *See, e.g.,* ***Rockford Principals and Sup'rs Ass'n v. Board of Educ. of Rockford School Dist. No. 205,* 721 F.Supp. 948, 950 (N.D.Ill. 1989)**, *citing Loeb v. Gray,* **131 Ill.App.3d 793 475 N.E.2d 1342 (Ill.App.Ct. 1985)**. "Even in the context of an implied employment contract, the requirements of formation are not present unless both parties intended to contract, in other words, an offer and acceptance." ***Id*., *citing Vail v. Bd. of Educ. of Paris Union Sch. Dist. No. 95,* 706 F.2d 1435, 1438 (7th Cir.1983).** Plaintiffs' interlineation of different salary

17

provisions and, in Allen's case a different assignment as well, modified the terms of the original offer, and constituted a rejection of that offer and a counteroffer. Accordingly, although Plaintiffs signed their respective employment agreements, they signed not contracts but counteroffers. And for this reason, the statement that Plaintiffs had not signed their contracts was not false. The documents signed by Plaintiffs lack the signatures of District officials, evidencing that the decision by the District not to accept Plaintiffs' counteroffers. As a result, no valid and enforceable contracts were formed.

### C. Defamation

In their response to the District's motion for summary judgment, Plaintiffs assert that they were defamed and stigmatized by the District's conduct in falsely stating that they had not signed contracts. Even if Plaintiffs had a constitutionally protected interest in continued employment *and* had signed contracts, they still could not prevail on this issue. Again, Plaintiffs make the fatal error of stating that they "will show" that Saunders's false statements inhibited them in pursuing other public employment in the educational administration field. Plaintiffs offer no evidence that they attempted to find employment in that field and were rejected for *any* reason, much less a reason that has a demonstrable nexus with their refusing to sign a performance-based contract.

Plaintiffs' claim fails also for a more basic reason: defamation was not pled in the First Amended Complaint ("FAC") under which this action proceeds. *Cf.* Compl., Doc. 2, pp. 9-13 with FAC, pp. 59-63. There is simply no claim for defamation in the action presently before the Court. The Court notes, however, that if the original claim had been carried forward into the FAC, Plaintiffs' argument goes beyond even that pleading. In the defamation count of the original complaint, Plaintiffs alleged that they suffered the following damages: embarrassment, shame and

humiliation; loss of good name and reputation; and mental anguish and suffering. At no time in this action did Plaintiffs allege that they were inhibited in pursuing other employment by the District's actions.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant East St. Louis School District 189's motion for summary judgment (Doc. 39) and **DISMISSES** this action with prejudice. The Clerk of Court shall enter judgment in favor of East St. Louis School District 189 and against Plaintiffs Sheryl Coleman and Luberta Allen. This case is closed.

**IT IS SO ORDERED.**

**DATED this 11th day of March, 2010**

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**